

**Arthur Z. Schwartz**
Principal Attorney

aschwartz@afjlaw.com

225 Broadway, Suite 1902
New York, New York 10007

t. (212) 285-1400
f. (212) 285-1410

www.afjlaw.com

June 30, 2026

By Email: Eshkenazi_chambers@nyed.uscourts.gov and ECF
Hon. Lara A Eshkenazi
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    Patafio v. Local 100, Transport Workers Union
> 25-cv-06528
> **Request for A Conference Regarding Discovery Abuse
> and About A Rule 11 and Discovery Briefing Schedule**

Dear Judge Eshkenazi:

We mentioned during the settlement conference that the Plaintiffs were utilizing this lawsuit as a basis to engage in a broad range of inappropriate discovery, seeking literally hundreds of other documents from Local 100, the Local 100 Staff Pension Fund, the International TWU, and Richard Davis, the former President. These requests go  way beyond what a member can compel production of under 29 USC Sec. 431(c). I am attaching each of those efforts (that we have – some were not served on us) to this letter.

This is how Plaintiff's  describe their lawsuit:
> *Plaintiff John Paul Patafio, Zachary Arcidiacono and Haile DaBreo bring this Complaint to redress the **failure to disclose the written employment agreement** [which they label a" Maintenance of Employment Deal"] that Local 100 signed with its former President Richard Davis following his resignation for serious sexual misconduct, and to disclose records setting forth the union duties that former President Davis has performed **under that employment agreement,** which appears to be nothing more than a corrupt misuse of union resources for a no-show job for a sexual predator.   In addition, Plaintiffs seek to review the records of any agreement made by Defendant with the "Jane Doe" who credibly accused former President Davis of misconduct.*

And this is the relief they seek:
> *WHEREFORE, Plaintiffs demand judgment of Defendant,*
> *a.Declaring that Plaintiffs have just cause to examine the Maintenance of Employment*



Hon. Lara A Eshkenazi
June 30, 2026
Page 2

> *Deal and all records pertaining to Richard Davis's work activity pursuant to the Maintenance of Employment Deal, as well as all records pertaining to any agreement reached with "Jane Doe;"*
> *b. Ordering that Defendant immediately grant Plaintiffs full access to examine and copy the Maintenance of Employment Deal together with all records pertaining to Richard Davis's work activity, including but not limited to, statements of hours worked and claimed reimbursement of expenses since January 24, 2025, as well as any agreement reached with "Jane Doe" and the records pertaining thereto;*

29 USC Sec 431(c) does not provide for a suit in which you seek, through discovery, to prove "just cause. " It provides that a union must " permit [a] member **for just cause** to examine any **books, records, and accounts necessary to verify [the LM2] report**. This is not a provision which involves a fishing expedition to find just cause; a suit is not to be commenced unless the member can show "just cause." The statute does not establish ***an entitlement to discover every document a union prepares or maintains,"*** *Brown v. Loal. 701 of Int'l Bhd. of Elec. Workers,* 996 F. Supp. 781, 790 (N.D. Ill. 1998). And this statute, as opposed to 29 USC Section 501, is not a vehicle to challenge a decision which the union made about some financial matter..

Counsel for Plaintiffs have been repeatedly told that the Davis document is a Separation Agreement and Release, and Plaintiffs have confidentially reviewed the Davis Agreement and Release, and now know, if he did not before (which could only be because Plaintiff Patafio withheld information from his lawyer) that there is no "Maintenance of Employment Agreement" with Richard Davis. The *Separation Agreement and Release*, included a severance payment paid out as wages, an arrangement which is fairly typical feature of severance agreements, and which is wholly lawful. See i.e., *Fraiberg v. 4Kids Ent., Inc.*, 75 A.D.3d 5805 (2010)

Severance agreements are negotiated contracts where employers provide pay and benefits upon termination, often in exchange for a release of legal claims. While not legally required by the FLSA, severance is often paid as a lump sum or as salary continuation (wages) over time.

### *Key Aspects of Severance Payments:*

- *Payment Structures: Severance can be paid as a single **lump sum payment** soon after termination, or as **continued salary payments** at regular intervals.*
- *Contractual Obligation -  severance is a contractual obligation, not wages, but if paid in the form of wages, it is taxable;*
- *Common Components: Typical agreements include salary pay, extension of health insurance/benefits, and non-disparagement or non-compete clauses.*



Hon. Lara A Eshkenazi
June 30, 2026
Page 3

- ***Negotiation:*** *The payment method—lump sum vs. salary continuation—is often negotiated.*

If they didn't know it before they filed, Plaintiffs now know that there is no "Maintenance of Employment Agreement," and that therefore there are no *records pertaining to Richard Davis's work activity, including but not limited to, statements of hours worked and claimed or reimbursement of expenses since January 24, 2025,* Given this knowledge, the lawsuit demand re Davis comes down to a copy of his Separation Agreement.

The Agreement with Jane Doe, negotiated after she filed a legal action, was the settlement of sexual assault litigation. The Agreement is confidential – to protect all parties involved. The Labor Department does not require the details to be stated on the LM-2, only the sum paid. It is there, on Line 121 on **Schedule 12**, as part of other payments made to individuals. Here is what the LM-2 Instruction Form (Exhibit I) says about confidential information:

Special Procedures for Reporting Confidential Information

Filers may use the procedure described below to report the following types of information:

 • Information that would identify individuals paid by the union to work in a non-union bargaining unit in order to assist the union in organizing employees, provided that such individuals are not employees of the union who receive more than $10,000 in the aggregate in the reporting year from the union. Employees receiving more than $10,000 must be reported on Schedule 12 – Disbursements to Employees;

 • Information that would expose the reporting union's prospective organizing strategy…;

 • Information that would provide a tactical advantage to parties with whom the reporting union or an affiliated union is engaged or will be engaged in contract negotiations…;

 • **Information pursuant to a settlement that is subject to a confidentiality agreement,** or that the union is otherwise prohibited by law from disclosing; and,

 • Information in those situations where disclosure would endanger the health or safety of an individual.

With respect to these specific types of information, if the reporting union can demonstrate that itemized disclosure of a specific major receipt or disbursement, or aggregated receipt or disbursement would be adverse to the union's legitimate interests, the union may include the receipt or disbursement in Line 3 of Summary Schedule 14 (Other Receipts) or in Line 5 of Summary Schedules 15-22 for Schedule 14. (Representational Activities) or 19 (Union Administration). In Item 69



Hon. Lara A Eshkenazi
June 30, 2026
Page 4

(Additional Information) the union must identify each schedule from which any itemized receipts or disbursements were excluded because of an asserted legitimate interest in confidentiality based on one of the first three reasons listed above. No notation need be made for exclusion of information disclosure of which is prohibited by law or that would endanger the health or safety of an individual.

**The notation must describe the general types of information that were omitted from the schedule, but the name of the payer/payee, date, and amount of the transaction(s) is not required…**.

A union member, however, has the statutory right "to examine any books, records, and accounts necessary to verify" the union's financial report if the member can establish "just cause" for access to the information. 29 U.S.C. 431(c); 29 U.S.C. CFR 403.8 (2002). Any exclusion of itemized receipts or disbursements from **Schedules 14, 15, or 19** for one of the first three reasons listed above would constitute a per se demonstration of "just cause" for purposes of this Act.[**In this case the exclusion was from Schedule 12**.] Consequently, any union member (and the Department), upon request, has the right to review the undisclosed information that otherwise would have appeared in the applicable schedule[**14, 15 or 19**] if the union withholds the information in order to protect confidentiality interests. Exclusion of information disclosure of which is prohibited by law or that would endanger the health or safety of an individual creates no per se demonstration of "just cause."

The allegations made against former President Davis by Jane Doe are extremely disturbing, and Jane Doe opposes their dissemination. We know that Plaintiffs have the International Union's "Confidential Report" which was prepared about the allegations. The have no need to know more, at least to explain an entry on the LM2. Nowhere in the Amended Complaint do Plaintiffs even attempt to explain the "just cause" for seeing a copy of the Jane Doe Agreement. And certainly, nothing in Section 431 (c) would justify a request (which they have now interposed) to see ***all records** pertaining to any agreement reached with "Jane Doe" including lawyer communications, exchanges of proposals, recommendations of counsel, witness statements, confidential affidavits and testimony from witnesses, communications between counsel, the union's communications with its counsel, and the recommendations of any mediator. Section* 431(c) does not entitle union members to see those records, and Plaintiffs never asked for them prior to filing suit. They made one request, about Davis, focused on his work product, about a month before they filed suit, and made the Jane Doe request (which had her name on it) one month after they filed suit, basically seeking a copy of the confidential agreement.



Hon. Lara A Eshkenazi
June 30, 2026
Page 5

The two requests, for the Davis agreement records, and for the Jane Doe -related records, are annexed to the First Amended Complaint as exhibits.

Plaintiffs could not, with what they now know, establish "just cause" to proceed any further. "Just cause" would be an assertion that something was reported inaccurately. They brought this lawsuit **4 months before** the 2025 LM2 Report was filed, seeking information about 2025 expenditures. Some courts have allowed a review of records which will find their way into the next report, but here they know, at this point in the litigation, that they have no "just cause." Plaintiffs now know that Davis signed a Separation  Agreement, with severance money payable as wages over a 2 year period. Now that that  have seen the 2025 LM2 they can see that that is exactly what occurred, and that the report is accurate. They also know that  nothing in the LM2 which evidences "just cause," to see the union's and union's counsel's investigation and negotiation in the of  sexual harassment litigation, commenced via a public filing.

Not only have Plaintiffs filed a lawsuit with no foundation, but they also want to use it to do a broad stroked fishing expedition to get hundreds of other documents. They have served the Local Union with a Request to Produce (Ex. A), Interrogatories (Ex. B), and a Request to Admit (Ex. C), all of which seeks an astounding array of documents and information which have nothing to do with the LM-2. They ask, for example, in the Interrogatories:

1. *Identify the person who initially suggested that Mr. Davis and Local 100 enter into an NDA.*
2. *Identify all persons who contributed or provided input into the drafting of the NDA.*
3. *Identify all attorneys who provided legal advice concerning the NDA to*
   a. *Richard Davis, and*
   b. *Local 100*
4. *Identify all drafts of the NDA and communications concerning the negotiation of the NDA.*
5. *Set forth in detail all of the tasks on behalf of Local 100 that former President Davis performed for the benefit of Local 100 after January 22, 2025. Identify each document concerning each such task.*
7. *Identify the person who initially suggested that Jane Doe and Local 100 enter into the Jane Doe-NDA.*
8. *Identify all persons who contributed or provided input into the drafting of the Jane Doe-NDA.*
9. *Identify all attorneys who provided legal advice concerning the Jane Doe-NDA to*



Hon. Lara A Eshkenazi
June 30, 2026
Page 6

          *a. Jane Doe, and*
          *b. Local 100*

10. *Identify all drafts of the Jane Doe-NDA and communications concerning the negotiation of the Jane Doe-NDA.*

11. *Do you contend that the TWU International and Local 100 are not separate persons with separate legal responsibilities with regard to the conduct that led to the suspension of Richard Davis as President of Local 100? If you do so contend, state in detail all facts that support the contention, identify each person who has knowledge relevant to the contention and identify all documents pertinent to the contention.*

12. *Do you contend that Local 100 suspended President Davis from the Presidency of Local 100? If you do so contend, state in detail all facts that support the contention, identify each person who has knowledge relevant to the contention and identify all documents pertinent to the contention.*

13. *Do you contend that Local 100 faced legal liability for suspending President Davis from the Presidency of Local 100 on or about January 21, 2025? If you do so contend, state in detail all facts that support the contention, identify each person who has knowledge relevant to the contention and identify all documents pertinent to the contention.*

The other discovery requests are similar.

Then there are the subpoenas to third parties. The have served a subpoena on Richard Davis Ex. D (which does not include the rider, which we were not supplied with); this, we understands, even asks for his medical records. Plaintiffs served a subpoena on the TWU International (which we were never served with). The TWU's response is annexed as Exhibit E, mostly asserts attorney-client privilege. The documents requested  all had to do with TWU's investigation of Davis's actions with Jane Doe and other women; none of which relate to an entry on the LM-2. We  also received Plaintiffs' Counsel's explanation of why he is entitled to subpoena all sorts of TWU International documents; not once does he mention the LM2 or Section 431(c). (See Ex. F.) Plaintiffs' counsel has also served the Local 100 Staff Pension Fund See Ex's. G-1 and G-2**.** Here they are seeking all sorts of Local 100 Staff Pension records, none of which involve some questioned entry on the LM-2.

This is the discovery one might conduct when challenging the propriety of  an expenditure, which involves an entirely different procedure under an entirely different law. None of what they ask for (drafts of NDAs, pension records, health records, and witness statements



Hon. Lara A Eshkenazi
June 30, 2026
Page 7

have anything to do with the LM2. A Local 100 member cannot use a 431(c) lawsuit as a fishing expedition to explore the reasoning behind the two Agreements. If you want to do that there is another statute to use: 29 USC Sec. 501. Counsel, and Plaintiff Patafio (who has commenced such a process about a different issue), knows that  a Section 501 case cannot be brought without first making a demand to the Union governing body, **and** without the permission of a District Court Judge. Furthermore, an LMRDA Section 501 claim cannot be brought against a labor organization. *See Head v. Bhd. of Ry., Airline and S.S. Clerks,* 512 F.2d 398, 398 n. 1 (2d Cir.1975); *Commer v. Am. Fed'n of State, Cnty. & Mun. Emps.,* 390 F.3d 203, 204 (2d Cir. 2004).

Our response to the continued litigation of this case – **without a showing of cause upfront-** along with the incredibly expansive discovery- has been a Rule 11 Letter (Ex. H), which counsel for Plaintiff has not responded to.

We ask this Court to again stay all discovery that Plaintiff has served, including the subpoenas, and set up a Rule 11 litigation schedule, combined with a litigation schedule addressed to the discovery and the subpoenas. A conference would be helpful in getting this going.

Thank you for your consideration.

Respectfully submitted,

/s/ *Arthur Z. Schwartz*

Arthur Z. Schwartz

cc:    David Tykulsker – by ECF
       Richard Mark (Counsel to TWU) – by email
       Bhavleen Sabharwal (Counsel to Richard Davis)
       Jane Lauer Barker (Counsel to the Local 100 Staff Benefit Fund)