advocates
for justice
chartered attorneys

225 Broadway, Suite 1902
New York, New York 10007

t. (212) 285-1400
f. (212) 285-1410

www.afjlaw.com

**Arthur Z. Schwartz**
Principal Attorney

aschwartz@afjlaw.com

October 5, 2026

By ECF

Hon. Lara K. Eshkenazi
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Patafio v. Local 100, Transport Workers Union
25 Civ. 06528
Discovery Dispute

Dear Judge Eshkenazi:

Attorney Tykulsker's letter of this date in so inaccurate that it is hard to know where to start.

First, Local 100 has never stipulated or agreed that plaintiffs had "just cause" (the words in the statute) to delve into the motives behind the documents which the union considered confidential.

> 29 USC Sec 431(c), the jurisdictional/statutory basis for this lawsuit, states :
> **c)Availability of information to members; examination of books, records, and accounts**
> Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary **to verify such report.**

advocates
for justice
chartered attorneys



Plaintiffs brought their lawsuit in November 2025. The 2025 LM2 was not filed with the Labor Department until March 2026. But they brought suit about events which occurred in 2025, which hadn't yet been reported in any form. Their lawsuit was not designed to verify the LM2 which hadn't been filed, it was to get access to a documents one of which their lawsuit called a "maintenance of employment agreement." This is how they describe their own lawsuit:

> *Plaintiff John Paul Patafio, Zachary Arcidiacono and Haile DaBreo bring this Complaint to redress the* ***failure to disclose the written employment agreement*** [which they label a" Maintenance of Employment Deal"] *that Local 100 signed with its former President Richard Davis following his resignation for serious sexual misconduct, and to disclose records setting forth the union duties that former President Davis has performed* ***under that employment agreement,*** *which appears to be nothing more than a corrupt misuse of union resources for a no-show job for a sexual predator. In addition, Plaintiffs seek to review the records of any agreement made by Defendant with the "Jane Doe" who credibly accused former President Davis of misconduct.*

This lawsuit, as self described, was not about obtaining financial records. It was to disclose the work records of former President Richard Davis who they alleged was performing a no show job (to use more common parlance). It was not about verifying the LM2 filed six months later. And in their amended complaint they included their demand to see "records of any agreement " to settle a sexual harassment complaint (which complaint, itself, was public record and could be obtained from the State Division for Human Rights under the FOIL.)

Nowhere do Plaintiffs explain what "just cause" they had to explore either of these agreement is 2025 in order to verify what was going to appear in the 2026 LM2. And we have never conceded that they had just cause.

Even if the lawsuit had been withdrawn in 2025 and refiled in March 2026, there might been "just cause" in connection with the Davis payments since the LM2 showed him being paid a full year salary in 2025. They could not have shown just cause about the payments made to Jane Doe, because until I showed them where it was stated on the LM2, they could not even point out some questionable payments other than to Davis, which they now know were severance payments. One of the plaintiffs, Debreau, gave the story to a local newspaper called the Chief, which on July 3, 2026, published the following (in part):

advocates
for justice
chartered attorneys



# Former Local 100 president earned over $220k in 2025 under sexual assault severance agreement

## Earned full salary, healthcare, vacation pay for one month of work

BY HARPER FREEMAN
Posted 7/3/26

The city's largest transit worker union paid its former president more than $220,000 in 2025 under a severance package agreed to after he was ousted one month into the year under a cloud of allegations that he pressured a female subordinate into having sex with him on several occasions and then threatened to kill her if she spoke about the encounters.

Transport Workers Union Local 100 paid out $221,386 to Richard Davis last year in salary, health and other benefits in compliance with a maintenance of employment deal the union and Davis agreed to, according to financial records. Under that agreement, Davis would be given 100 weeks of severance pay, that includes his accumulated vacation, sick time and compensatory time, and would remain enrolled in the union's healthcare plan through the end of 2026.

The Chief quoted Debreau expressing his opinion about the agreement; note the paper calls it a "maintenance of employment deal."

The Labor Department has published instructions about when a union may keep details about reported expenditures confidential. LM-2 Instruction Form says this, in part, about confidential information:

> *Special Procedures for Reporting Confidential Information*
>
> *Filers may use the procedure described below to report the following types of information:*
>
> • **Information pursuant to a settlement that is subject to a confidentiality agreement,** or that the union is otherwise prohibited by law from disclosing; and,

> With respect to these specific types of information, if the reporting union can demonstrate that itemized disclosure of a specific major receipt or disbursement, or aggregated receipt or disbursement would be adverse to the union's legitimate interests, the union may include the receipt or disbursement in Line 3 of Summary Schedule 14 (Other Receipts) or in Line 5 of Summary Schedules 15-22 for Schedule 14. (Representational Activities) or 19 (Union Administration). In Item 69 (Additional Information) the union must identify each schedule from which any itemized receipts or disbursements were excluded because of an asserted legitimate interest in confidentiality based on one of the first three reasons listed above. No notation need be made for exclusion of information disclosure of which is prohibited by law or that would endanger the health or safety of an individual.
>
> **The notation must describe the general types of information that were omitted from the schedule, but the name of the payer/payee, date, and amount of the transaction(s) is not required….**
>
> A union member, however, has the statutory right "to examine any books, records, and accounts necessary to verify" the union's financial report if the member can establish "just cause" for access to the information. 29 U.S.C. 431(c); 29 U.S.C. CFR 403.8 (2002). Any exclusion of itemized receipts or disbursements from **Schedules 14, 15, or 19** for one of the first three reasons listed above would constitute a per se demonstration of "just cause" for purposes of this Act.[**In this case the exclusion was from Schedule 12**.] <u>Consequently, any union member (and the Department), upon request, has the right to review the undisclosed information that otherwise would have appeared in the applicable schedule[**14, 15 or 19**] if the union withholds the information in order to protect confidentiality interests.</u>

We have offered, as per the Labor Department instructions, to allow plaintiffs to personally review the two settlement agreements (Plaintiffs know now that the Davis Agreement is a severance agreement, not a maintenance of employment agreement) as long as they were not published. They have refused such a review. So, we have done what the Labor Department called for.

For a while, attorney Tykulsker and I discussed having the Court examine the two agreements in camera (despite the lack of "just cause.:) to determine whether the agreements, by their terms were confidential. We even agreed that the standard to apply was New York General

Obligations Law (GOL) § 5-336 and New York CPLR § 5003-B. We seemed to agree that if the Court found that they had the requisite language under the GOL and CPLR, then the question we would litigate was whether the DOL Instructions allowed confidentiality in this case.

> In his last draft, contrary to today's letter, he wrote:
> *"As the Court is aware, the parties* ***do not agree about the assertion that there is just cause under 29 U.S.C. § 431 for the Union to produce the Davis Separation*** *Agreement and the "Jane Doe" Settlement Agreement."*

And then he proposed writing to the Court:

> *"For purposes of this Court's in camera review only, Plaintiffs will stipulate that both the "Jane Doe" and Richard Davis Agreements conformed to the procedural requirements of New York CPLR § 5003-B, and General Obligations Law §5-336. Plaintiffs specifically reserve the right to argue that the disclosure and provision to "all parties" of those statutes is best read as including union members, and that the agreements in question are contrary to those statutes.*
>
> *The parties to this lawsuit (not Davis or Jane Doe), have agreed to have the Court examine the two documents in camera to ascertain whether they bind Local 100, as opposed to the individual parties, to maintain confidentiality."*

Then all of a sudden, the idea to have this *in camera* review was abandoned by Plaintiffs, and they insisted on taking Local 100 President Chiarello's deposition tomorrow. My response was that I would be objecting to inquiring what his "intention" was when he signed the two agreements, since we agreed that New York CPLR § 5003-B, and General Obligations Law §5-336, would be determinative. I also added that the union was on the verge of completing negotiations on a collective bargaining agreement with the MTA covering 40,000 employees, and that this was not an opportune time to take a deposition.

As we expressed from the beginning, Section 431(c) does not provide for a suit in which you seek, through discovery, to prove "just cause. " It provides that a union must " permit [a] member **for just cause** to examine any **books, records, and accounts necessary to verify [the LM2] report**. This is not a provision which involves a fishing expedition to find just cause; a suit is not to be commenced unless the member can show "just cause." "The statute does not establish ***an entitlement to discover every document a union prepares or maintains,"*** *Brown v.*

*Loal. 701 of Int'l Bhd. of Elec. Workers,* 996 F. Supp. 781, 790 (N.D. Ill. 1998). And this statute, as opposed to 29 USC Section 501, is not a vehicle to challenge a decision which the union made about some financial matter..

Now they have seen the March 2026 LM2. It shows Davis being paid a salary for 2025, and there is a line which shows an expenditure which is coded as confidential, and which refers them to the Labor Department Regulations about confidentiality. With respect to the Dabis deal, Debreau told the Chief newspaper that " Under that agreement, Davis would be given 100 weeks of severance pay, that includes his accumulated vacation, sick time and compensatory time, and would remain enrolled in the union's healthcare plan through the end of 2026. " Evidently (as we have asserted from the beginning) the Plaintiffs have a copy of the agreement, perhaps without the signature page. They want a signed copy so they can use it in a campaign for union office.

The "discovery" that Plaintiffs want to do has nothing to do with verification of an entry on the 2026 LM-2. If they still believe that there is a Maintenance of Employment Agreement, " they have not explained how that is something different than what Debreau described to The Chief.

They have also not explained what just cause they have to seek the settlement agreement in the sexual harassment lawsuit. We have pointed out what line in the LM2 the payment is described. They know it is a sexual harassment litigation settlement. They have never expressed why they need anything more. Discovery isn't going to make that document more or less confidential. It is or it isn't. Several days ago, Attorney Tykulsker agreed that it is. If he wants to retract that stipulation, he can, but the answer, really, is to have the Court look at the Jane Doe document or both documents and decide whether is meets the requirements of New York CPLR § 5003-B, and General Obligations Law §5-336, and if they do, whether the confidentiality allowed under those statutes can be read to exclude of those statutes is best read as including union members. (I am using Attorney Tykulsker's words, even though I am not sure what he means.)

The discovery here is simply a form of harassment. There is an underlying theme of seeking communications between union officers and counsel. They even ask for copies of emails between counsel and the union officers involved.

The case is far too simple to allow this to proceed this way. Putting "just cause" aside (for now) either the agreements, by their terms, are confidential or they aren't, and if they are, do Labor Department regulations allow them to be kept confidential from union members. Debreau

advocates
for justice
chartered attorneys



has already revealed the terms of the Davis deal to The Chief newspaper; now all he wants is a court ruling that what he did was all right.

We again request a stay of discovery, and either use of the *in camera* process which counsel had been discussing, or a briefing schedule for a discovery-related motion to quash.

Respectfully submitted,

*Arthur Z. Schwartz*

Arthur Z. Schwartz

cc: All counsel, by ECF